IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SALEM WOMEN'S CLINIC, INC.,                    Civil No. 07-6092-HO
an Oregon corporation, and
ELIZABETH R. HARMON, M.D.,                     ORDER

                    Plaintiffs,
            v.

SALEM HOSPITAL, an Oregon
hospital non-profit
corporation,

                    Defendant,


    The complaint includes claims for violation of federal and

state antitrust statutes, and state common law claims for breach

of the covenant of good faith and fair dealing, and interference

with economic advantage.  Plaintiffs seek damages and injunctive

and declaratory relief.  Plaintiffs filed a motion for

preliminary injunction and application for temporary restraining

order.

    Plaintiffs' filings address only their federal claims.  The

basis for these claims is defendant's alleged discrimination

against plaintiff, which includes the suspension of physician
obstetric (OB) privileges, and defendant's policy of limiting a
physician or call sharing group to no more than four
collaborating certified nurse midwives (CNMs).  As more fully
explained below, the merits of plaintiffs' federal antitrust
claims are highly fact-dependent and not easily assessed on the
preliminary record, plaintiffs' injuries are compensable should
plaintiffs prevail, and there is little evidence that irreparable
harm will result if preliminary injunctive relief is withheld.
Accordingly, plaintiffs' motion for preliminary injunction is
denied.  Plaintiffs' application for temporary restraining order
is denied as moot.

<u>Factual Background</u>

    Plaintiff Elizabeth Harmon, M.D., is the primary shareholder
of plaintiff Salem Women's Clinic, Inc. (SWC).  Complaint, ¶ 6.
Dr. Harmon maintains an active obstetric (OB) and gynecology
(GYN) practice in Salem, Oregon, under the auspices of SWC.  <u>Id</u>.
SWC delivers approximately 70 babies per month at defendant Salem
Hospital, and midwifery care is an integral part of SWC's
obstetric practice.  <u>Id</u>., ¶¶ 2-3.  Defendant has a policy
limiting a physician or call sharing group of physicians to no
more than four collaborative CNMs.  <u>Id</u>., ¶ 20.  On or about
January 25, 2007, defendant suspended Dr. Harmon's OB privileges.
<u>Id</u>., ¶ 11.  Plaintiff first received OB and GYN practice

privileges at Salem Hospital in 1988. Id., ¶ 7.

Defendant has yet to act on a recommendation of the Medical Staff Executive Committee (MEC) that Dr. Harmon's application for reappointment to the medical staff for OB privileges be denied. In February 2007, Dr. Harmon agreed that while her OB privileges are suspended, she will refrain from performing OB services at Salem Hospital, conferring with CNMs or OB physicians regarding OB patients at Salem Hospital, and assisting in OB surgeries. Plaintiffs now contend that Dr. Harmon made this agreement under duress, and that Dr. Harmon revokes the agreement.

A hearing on Dr. Harmon's application for reappointment is tentatively scheduled for July 25-26, 2007, depending on witness availability. In a recent filing, Obstetrics Medical Director Josephine VonHerzen, M.D., states that defendant's Family Birth Center "hospitalists" will provide backup and collaborative OB coverage to SWC CNMs through the completion of Dr. Harmon's hearing.

Plaintiffs' seek an order enjoining defendant (1) to authorize Dr. Harmon to exercise OB privileges in accordance with her authority existing on January 24, 2007, pending further order of the court, (2) to provide physician backup for plaintiffs' OB and midwifery patients pending further order of the court, (3) not to report any adverse action regarding Dr. Harmon to the National Practitioner Data Bank pending resolution of the case or

3 - ORDER

until further order of the court, (4) to process promptly and in good faith any applications for OB privileges from any providers seeking to join or provide <u>locum</u> <u>tenens</u> services to SWC, and (5) to take such other actions the court deems equitable and appropriate to allow plaintiffs to stay in business during the pendency of the case.

<u>Legal Standards</u>

> [A] court may grant a preliminary injunction if a plaintiff shows (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant a preliminary injunction if a plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable harm or that serious questions are raised and the balance of hardships tips sharply in his favor.

<u>Earth Island Institute v. United States Forest Svc.</u>, 442 F.3d 1147, 1158 (9th Cir. 2006) (internal citations and quotations omitted).

<u>Discussion</u>

Plaintiffs' memorandum does not include a discussion of plaintiffs' state law claims. The court does not consider the potential merits of those claims in determining the propriety of ordering preliminary injunctive relief.

Plaintiffs allege claims under Sections 1 and 2 of the Sherman Act (the Act), 15 U.S.C. § 1, <u>et</u> <u>seq</u>. Section 1 of the Act provides, "[e]very contract, combination in the form of trust

4 - ORDER

or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal."  15 U.S.C. § 1.  Section 2 provides, "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States . . . shall be deemed guilty of a felony, . . ."  15 U.S.C. § 2.  A person injured by violation of these provisions may sue in federal district court. 15 U.S.C. § 15(a).

In support of their Section 1 claim, plaintiffs allege that defendant conspired with physicians who compete with plaintiffs to subject plaintiffs to discrimination, including the suspension and proposed non-renewal of Dr. Harmon's OB privileges.  In support of their Section 2 claim, plaintiffs allege that defendant is exercising monopoly power with the intent to drive plaintiffs out of business.  Plaintiffs further allege that defendant's policy of limiting a physician or call sharing group to no more than four collaborating CNMs is a per se violation of Sections 1 and 2 of the Act.  A per se violation is a practice so likely to harm competition that a plaintiff need not produce evidence of actual effects of the practice on competition.  Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1410 (9th Cir. 1991).

Staffing decisions and policies restricting nonphysicians may serve a competitive purpose, and therefore do not constitute

5 - ORDER

per se unreasonable restraints on trade.  Bhan, 929 F.2d at 1412;
BCB Anesthesia Care, LTD. v. Passavant Memorial Area Hospital
Assoc., 36 F.3d 664, 667 (9th Cir. 1994).  Full development of
the facts is therefore required to determine whether defendant's
CNM policy and actions regarding Dr. Harmon's privileges
unreasonably restrain trade.  The evidence before the court
primarily concerns the veracity of defendant's stated motivations
for its actions concerning Dr. Harmon's privileges.  This
evidence is relevant, but not dispositive.  Hahn v. Oregon
Physicians' Svc., 868 F.2d 1022, 1026 (9th Cir. 1989).  There is
little evidence regarding delineation of, and effects to, a
relevant market.  Bhan, 929 F.2d at 1413.  To succeed, antitrust
plaintiffs generally must also prove a conspiracy, nexus to
interstate commerce, and anti-trust injury.  BCB Anesthesia, 36
F.3d at 668.  Given the factual complexity of antitrust claims,
Bhan, 929 F.2d at 1409, the court cannot meaningfully determine
on this limited record the likelihood that plaintiffs will
succeed on their particular antitrust claims, or whether
plaintiffs' claims raise serious questions.  Courts and
commentators alike note that in cases involving one hospital's
decision about staff privileges, plaintiffs do not frequently
prevail on Sherman Act claims.  BCB Anesthesia, 36 F.3d at 667; 2
John Miles, Health Care and Antitrust L. § 10:1 (2007).

    Plaintiffs make a significant showing of substantial

economic harm that will result if Dr. Harmon's privileges are not restored.  This harm is compensable, however, should plaintiffs prevail.

Plaintiffs also contend that the imminent closure of SWC's OB practice that will result if Dr. Harmon's OB privileges are not renewed will result in a "crisis of care" due to a shortage of care providers in the Salem area.  This contention finds little support in the evidence, and its force is diminished by plaintiffs' claim that SWC's patients are finding other providers because SWC cannot guarantee in-hospital OB and midwifery services beyond July 1, 2007.  As noted, defendant recently committed its hospitalists to provide backup to SWC CNMs through the completion of the hearing on Dr. Harmon's application for reappointment of OB privileges.

Due to the difficulty in assessing the merits of plaintiffs' claims at this stage of the proceedings, the compensable economic harm facing plaintiffs, and the dearth of evidence of irreparable harm, plaintiffs' requests for preliminary injunctive relief are denied.  The determination that a preliminary order is not warranted does not minimize the gravity of the situation facing plaintiffs and SWC employees.  In the absence of risk to health and safety, plaintiffs, defendant and the public are best served by maintenance of the status quo until a final decision on a recommendation with such potentially

serious consequences.   Short of compromising health and safety, defendant should make every effort to provide backup and collaborative obstetrical coverage to Salem Women's Clinic certified nurse midwives until it finally determines whether to renew obstetrical privileges enjoyed by Dr. Harmon for nearly 20 years.   The court hopes this is what Dr. VonHerzen intends by her statement that defendant's hospitalists will provide such coverage "through the completion of [Dr. Harmon's] hearing which is currently pending at Salem Hospital under its fair hearing plan."

Conclusion

Based on the foregoing, plaintiffs' motion for preliminary injunction [#2] is denied; plaintiff's application for temporary restraining order [#9] is denied as moot.

IT IS SO ORDERED.

DATED this ___28th___ day of June, 2007.

                                    __s/ Michael R. Hogan____
                                    United States District Judge

8 - ORDER